IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI QUIROGA, | CASE NO. CV F 05-0216 LJO |
| Plaintiff, | **DECISION ON SOCIAL SECURITY COMPLAINT** |
| vs. | (Docs. 19, 20, 23.) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff Vicki Quiroga ("plaintiff") seeks this Court's review of an administrative law judge's ("ALJ's") decision that plaintiff is neither disabled nor entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1382c. Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate Judge, and by a December 9, 2005 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all proceedings. Based on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to remand for further proceedings.

# BACKGROUND

## Personal Background

Plaintiff is age 52, has an eighth grade education with no further formal education or training, and has worked as an auto detailer, waitress, cook and sales clerk. (AR 13, 60, 65, 66, 264, 265.)

## Administrative Proceedings

On April 26, 2002, plaintiff protectively filed her SSI application to claim disability since April 6, 2002 due to hepatitis C, thyroid and heart problems, anemia and herniated back. (AR 56a, 59.) With its September 13, 2002 Notice of Disapproved Claims, the Social Security Administration ("SSA") denied plaintiff's claim and determined that plaintiff's condition is not severe enough to prevent her to work. (AR 38.) On November 27, 2002, plaintiff filed her Request for Reconsideration to claim she experienced pain, lack of energy, and leg and back numbness. (AR 42.) With its June 5, 2003 Notice of Reconsideration, SSA again denied plaintiff's claim and determined that plaintiff's condition is not severe enough to prevent her to work. (AR 46.)

On July 1, 2003, plaintiff filed her Request for Hearing by Administrative Law Judge to claim SSA lacked information about all of her medical problems. (AR 50.) Plaintiff appeared at the March 12, 2004 ALJ hearing without a representative. (AR 252.) After discussion with the ALJ, plaintiff decided to seek a representative. (AR 255.) On May 26, 2004, counsel was appointed for plaintiff. (AR 20.) After an August 18, 2004 hearing, the ALJ issued his September 16, 2004 decision to conclude that plaintiff has the residual functional capacity for medium work reduced by postural limitations, is not disabled and thus is not entitled to SSI. (AR 19.)

Plaintiff submitted to SSA's Appeals Council her October 7, 2004 Request for Review of Hearing Decision/Order. (AR 9.) On December 20, 2004, the Appeals Council denied plaintiff's request to render the ALJ's September 16, 2004 decision subject to this Court's review. (AR 5.)

## Medical History And Records Review

### *Taft Community Medical Center*

Plaintiff treated at Taft Community Medical Center and on July 8, 1996 was assessed with low back pain. (AR 90.) As of December 9, 1996, plaintiff's magnetic resonance imaging ("MRI") "was highly unremarkable," plaintiff was started on a regimen of rest, moist heat/ice packs and Feldene. (AR

1  92.)  After experiencing pressure in her body's lower half, plaintiff attended January 9, 1997 physical
2  therapy to address lumbar herniated nucleus pulposus with right lower extremity sciatica.  (AR 93.)
3  Plaintiff complained of constant right low back pain and right knee numbness.  (AR 93.)  Plaintiff's
4  treatment plan included ultrasound, massage, TENS trial and home exercises.  (AR 94.)  Plaintiff
5  attended three physical therapy sessions up to January 24, 1997 and reported "no lasting symptomatic
6  improvement" but experienced "short-term benefit" after sessions and further benefit from TENS.  (AR
7  91.) Notes reflect that plaintiff "has been absent from her scheduled treatments following her third visit"
8  and the plan was "to discharge her from clinical management."  (AR 91.)  On June 3, 1997, plaintiff
9  complained of hand, arm and back pain.  (AR 89.)  Plaintiff missed a follow up June 17, 1997
10 appointment.  (AR 89.)

***Tony Carey, D.O., Treating Osteopath***

12      Plaintiff treated with osteopath Tony Carey, D.O. ("Dr. Carey"), and on January 27, 2000
13 complained of right back pain.  (AR 117.)  On February 27, 2001, plaintiff reported that she fell, hurt
14 her back, and experienced pain.  (AR 117.)  On September 24, 2001, plaintiff complained of weakness,
15 constant tiredness and sweating on and off.  (AR 112.)  On October 24, 2001, plaintiff requested
16 medication for hepatitis C.  (AR 110.)  March 31, 2001 lumbar spine x-rays revealed satisfactory
17 alignments and neither fractures nor significant findings.  (AR 106.)

18      On April 11, 2002, plaintiff complained of chills, body aches, headache and pounding heart.  (AR
19 101.)  Same day chest x-rays revealed no significant findings.  (AR 102.)

***Kern Integrity Medical Group***

21      Plaintiff treated a Kern Integrity Medical Group, and April 11, 2002 chest x-rays revealed no
22 significant findings.  (AR 233.)  May 23, 2003 chest x-rays were normal and revealed clear lungs.  (AR
23 214.)  A July 8, 2003 pelvic, thyroid ultrasound revealed mild thyromegaly of a normal echogenic
24 appearing thryroid gland.  (AR 212.)  On October 2, 2003, plaintiff treated with internist Grace Baruiz,
25 M.D. ("Dr. Baruiz"), and complained of leg and thigh pain and inability to stand.  (AR 201.)  Dr. Baruiz
26 assessed generalized pain, depression and fatigue.  (AR 201.)  October 13, 2003 lumbar spine x-rays
27 revealed mild changes of spondylosis with facet hypertrophic changes and no acute spinal pathology.
28 (AR 200.)  Up to March 2004, Dr. Baruiz continued to diagnose plaintiff with depression, anxiety,

fatigue, anemia, generalized pain and fibromyalgia. (AR 180, 184, 190, 195, 199.) March 8, 2004 notes reflect that plaintiff felt "much better, pain medication working." (AR 180.)

In a March 9, 2004 letter, Dr. Baruiz noted that plaintiff had been a patient since February 2003, has hepatitis C and fibromyalgia, treats for rheumatoid arthritis, complains of joint pains, disabling muscle pains and severe fatigues, suffers from clinical depression requiring antidepressant medication, and has other attendant ailments of hypothyroidism, headaches, hypertension and hyperlipidemia. (AR 235.) Dr. Baruiz concluded that given plaintiff's "medical and mental health problems, she most likely needs financial assistance as her present disabilities, in my opinion preclude her from engaging in gainful employment." (AR 235.)

### *Tomas B. Rios, M.D., Consultative Internist*

Internist Tomas B. Rios, M.D. ("Dr. Rios"), conducted a July 22, 2002 comprehensive internal medicine examination. (AR 120.) Plaintiff's chief complaints were hepatitis C, heart problems and chronic back pain. (AR 120.) Plaintiff admitted to Dr. Rios a history of intravenous drug use and complained of "being tired most of the time." (AR 120.) Plaintiff claimed she was hospitalized in March 2002 for myocardial infarction and underwent an angiography. (AR 120.) Plaintiff reported pain along the left upper pectoralis region and history of chronic back pain, including a herniated disc of the lumbar spine with pain radiating into the right gluteal area to the right leg. (AR 120.) Plaintiff noted ability to drive and "to do some limited housework." (AR 121.) Dr. Rios' examination revealed plaintiff's symmetric and normal motor strength of 5/5 in her upper and lower extremities and strong, normal grip strength. (AR 122.)

Dr. Rios diagnosed hepatitis C, chest pain syndrome, atypical, and chronic back pain. (AR 122.) Dr. Rios assessed that plaintiff's "allegation of labor restricting complications from her hepatitis C is not collaborated by today's examination" given the absence of stigmata of significant liver compromise, portal hypertension, or hepatic encephalopathy. (AR 122.) Dr. Rios found plaintiff's chest pain "atypical" of coronary artery disease and not exertionally related with no evidence of left ventricular compromise. (AR 123.) Dr. Rios "prophylactically precluded . . . very heavy lifting beyond 50 pounds on an occasional basis and 25 pounds on a frequent basis." (AR 123.) As to plaintiff's chronic back pain, Dr. Rios assessed tenderness along the lumbar spine but "no true findings of nerve root irritation."

(AR 123.) Dr. Rios precluded plaintiff from frequent bending, stooping, squatting or climbing activities. (AR 123.) Dr. Rios assessed plaintiff's hypothyroidism as "clinically thyroid." (AR 123.)

### *Kern County Mental Health*

Plaintiff saw a therapist at Kern County Mental Health on January 22, 2003. (AR 138.) Plaintiff reported that she is unable to be around people, becomes anxious, feels helpless and hopeless, hears voices and experiences sleeping difficulty. (AR 138, 139.) Plaintiff noted that she started to use heroin and cocaine in her late 20s but has been clean and sober for two years. (AR 140.) The therapist noted that plaintiff applied for SSI, had suffered abuse as a child and adult, has been a drug addict most of her adult life, had been imprisoned for drugs, and is currently in a methadone program. (AR 141, 143.) The therapist assessed plaintiff with major depression disorder with psychotic features. (AR 142.) The therapist recommended a psychiatric evaluation and ongoing medication management. (AR 143.) On February 11, 2004, plaintiff complained of feeling depressed and was assessed with depressed, anxious mood, auditory hallucinations, paranoid ideation, poor sleep and appetite, tearful affect, fair insight, judgment and memory, average intelligence, intact orientation, and major depression disorder with psychotic features and moderate disability. (AR 241, 243.)

A March 10, 2004 letter of a Kern County Mental Health recovery specialist noted that plaintiff had received services since January 13, 2003 for major depressive disorder with psychotic features and that psychiatrist Ravi Goklaney, M.D. ("Dr. Goklaney"), had provided plaintiff psychiatric services. (AR 234.)

On April 8, 2004, plaintiff complained of low energy and feeling depressed. (AR 242.) Plaintiff was assessed with depressed mood, auditory hallucinations, poor sleep, poor appetite, tearful affect, good insight, fair judgment, average intelligence, intact orientation and memory, major depression disorder, severe with psychotic features, and moderate disability. (AR 240, 242.) Plaintiff noted that medication helped. (AR 240.) On June 17, 2004, plaintiff complained of no energy and feeling overwhelmed. (AR 237.) Plaintiff was assessed with sad, depressed mood, auditory hallucinations, poor appetite, constricted affect, fair insight, memory and judgment, average intelligence, intact attention/concentration and orientation, major depression disorder, severe with psychotic features, and moderate current disability. (AR 237, 238.)

*Sonya Kelly, Ph.D., Consultative Psychologist*

Psychologist Sonya Kelly, Ph.D. ("Dr. Kelly"), conducted a January 25, 2003 comprehensive psychiatric evaluation. (AR 144.) Plaintiff's chief complaints were mental hepatitis C, thyroid problems, hearing voices, everyday pain, head pain, seeing spots, and clogged heart valve. (AR 144.) Plaintiff reported constant auditory hallucinations, depressed mood, loss of interest in activities, 100-pound weight increase, psychomotor retardation, fatigue, feelings of helplessness and hopelessness, poor concentration, a wish for death without suicidal plan or intent, nightmares, flashbacks, and irritability. (AR 145.) Plaintiff noted that she had been abused physically and sexually as a child and in her first marriage, that she lived with her two stepchildren then ages seven and eight, and that she last used heroin a year ago and before she started methadone. (AR 145, 146.) Plaintiff claimed that she had worked in 2000 in a clothing store doing general maintenance and that she had been jailed or imprisoned six or seven times on drug charges. (AR 146.) According to plaintiff, she has no difficulty to dress herself and "spends her time doing chores, watching television, and reading." (AR 146.)

Dr. Kelly noted that plaintiff was polite and cooperative, that her thought content was cohesive, coherent but poorly organized, that her mood and affect were restricted but sad, that plaintiff was oriented to person, place and situation, and that plaintiff's judgment and insight were fair. (AR 147, 148.) Dr. Kelly diagnosed major depressive disorder recurrent, severe with psychotic features, posttraumatic stress disorder, polysubstance dependence in sustained partial remission, and a Global Assessment of Functioning of 39. (AR 148.) Dr. Kelly noted plaintiff's anxiety, depressive and psychotic symptoms and that if plaintiff is randomly drug tested, plaintiff's psychiatric symptoms are likely due to mental illness as opposed to drug abuse and are severe enough "to interfere with her ability to maintain gainful employment for the next 12-36 months." (AR 148.) Dr. Kelly concluded that plaintiff's "psychological issues would interfere with her ability to perform simple and repetitive tasks on a consisten[t] basis as what would be required in a job like setting." (AR 148-149.)

*Ravi Goklaney, M.D., Treating Psychiatrist*

Plaintiff treated with psychiatrist Dr. Goklaney, who completed a May 15, 2003 Psychiatric Evaluation to note plaintiff's crying spells, insomnia, auditory hallucinations four or five times a week, feelings that people are coming after her, anxiety, social withdrawal, and aggressive behavior. (AR 176,

177.) Dr. Goklaney noted that plaintiff had constricted affect, depressed, sad and anxious mood, okay memory, average intellect, clear and organized thought processes, and fair insight and judgment. (AR 177.) Dr. Goklaney diagnosed major depression, recurrent severe with psychotic features. (AR 178.) Dr. Goklaney prescribed Paxil 20 mg and Seroquel 100 mg. (AR 178.)

Dr. Goklaney completed a June 5, 2003 Short-Form Evaluation for Mental Disorders to note plaintiff's orientation to all spheres, intact concentration, normal memory, average intelligence, anxious, depressed, blunted and constricted mood, auditory hallucinations, goal-directed thought process, and intact judgment. (AR 172, 173.) Dr. Goklaney assessed that plaintiff had: (1) unlimited ability to understand, remember and carry out simple instructions, to perform activities within a schedule, and to maintain regular attendance; (2) good ability to understand, remember and carry out complex instructions, to maintain concentration, attention and persistence, and to respond appropriately to changes in a work setting; and (3) fair ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (AR 174.)

### *Non-Examining State Agency Physicians*

A California Disability Determination Services ("DDS") physician completed a September 4, 2002 Physical Residual Functional Capacity Assessment to conclude that plaintiff is able to: (1) lift/carry 50 pounds occasionally and 25 pounds frequently; (2) stand/walk about six hours in an eight-hour workday; (3) sit about six hours in an eight-hour workday; (4) push/pull subject to the lift/carry limitations; (4) frequently balance; and (5) occasionally climb, stoop, kneel, crouch and crawl. (AR 127-128.) The DDS physician imposed neither manipulative, visual, communicative nor environmental limitations. (AR 129-130.)

DDS psychiatrist Marina C. Vea, M.D. ("Dr. Vea"), completed a June 3, 2003 Mental Residual Functional Capacity Assessment to conclude that plaintiff generally is not significantly limited in understanding and memory, sustained concentration and persistence, social interaction and adaptation. (AR 152-153.) Dr. Vea concluded that plaintiff with treatment by March 2004 would be able to understand and remember job instructions, to sustain concentration, attention, persistence and pace, and to relate, interact and adapt to changes in work setting. (AR 154.) Dr. Vea also completed a June 3, 2003 Psychiatric Review Technique to note plaintiff's depressive mood characterized by psychomotor

agitation or retardation, decreased energy, difficulty concentrating or thinking, hallucinations, delusions or paranoid thinking. (AR 159.) Dr. Vea assessed major depression disorder, severe with psychotic features and polysubstance abuse in partial remission but no severe impairments expected to last 12 months. (AR 156, 159, 164, 169.) Dr. Vea found mild restriction of daily living activities and difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace. (AR 166.)

### *Medications*

Plaintiff's medications have included Levoxyl 100 and 200 mg, Diclofenac Sod 75 mg, Wanfarin 2 mg, Sulfasalazine 500 mg, Plaquenil 200 mg, Synthroid .2 mg, Flexeril, Seroquel 100 mg, Naproxen 500 mg, Nasacort AQ 55 mg, Albuterol, Lipitor 10 mg, Levoryl 100 mg, Paxil 40 mg, Trazadone 50 mg, Lexapro 10 mg, Lisinopril 10 mg, and Vicodin 500 mg. (AR 64, 85, 86.)

### **Plaintiff's Activities And Testimony**

### *Reports And Questionnaires*

Plaintiff completed an undated Disability Report Adult to claim that she is "ill most of the time" and experiences pain, quick loss of breath and "no energy." (AR 59.) Plaintiff lost work hours because she felt sick "all the time" and lacked energy and strength in her arms and legs to the point where she was no longer able to perform her job as of April 6, 2002. (AR 59.)

Plaintiff completed a November 24, 2002 Reconsideration Disability Report to claim that she experienced pain, depression and stress. (AR 77.) Physical activity causes plaintiff pain. (AR 77.) Plaintiff's health prevents her to work. (AR 77.) Plaintiff experiences pain from putting on her clothes and needs assistance to put on her shoes. (AR 79.) Brushing her hair causes leg and back pain. (AR 79.)

In an undated statement, plaintiff claimed that her doctor "found more medical problems," that her "health is up and down," and that her "whole body is full of pain all the time." (AR 83.)

### *Plaintiff's August 18, 2004 ALJ Hearing Testimony*

Plaintiff appeared at the August 18, 2004 ALJ hearing with her counsel and testified that she is able to read and write, has a driver's license, and last worked in 1999 in a retail clothing store as a cashier. (AR 262, 264.) The most she lifted in that job was 25 pounds. (AR 265.) She was terminated

1  "for being sick all the time." (AR 265.)

2  Plaintiff detailed cars off and on in her mother's business from 1979 to the 1990s. (AR 265.)
3  The job required much bending, stooping, buffing, waxing and climbing. (AR 265.)

4  Plaintiff claims that lack of energy and constant pain prevent her to work. (AR 266.) The pain
5  is worst in her back, legs and feet, and she experiences pain in her hands, arms and shoulders. (AR 266,
6  273.) Plaintiff's feet swell, hurt and become cramped and numb. (AR 272.) Numbness crawls up
7  plaintiff's leg. (AR 272.) Plaintiff experiences similar feelings with her hips and knees. (AR 272.)
8  Plaintiff experiences a burning feeling in her back. (AR 273.) Plaintiff has burning pain in her hands
9  and which she assesses 6-8 on a 1-10 scale of severity. (AR 274.) The day before the ALJ hearing,
10 plaintiff was diagnosed with borderline lupus. (AR 266.) Plaintiff has fibromyalgia, rheumatoid
11 arthritis, hepatitis C, back problems, anemia, and thyroid problems. (AR 271.)

12 Plaintiff does not use a TENS unit and has not had back surgery because her back was not
13 "severe enough." (AR 273.) Plaintiff has had no physical therapy for her pain. (AR 274.) Plaintiff uses
14 a walker which she obtained from her mother. (AR 275.) The walker was not prescribed to her, and she
15 uses it because she has problems keeping her balance and falling. (AR 275.) Plaintiff's medications
16 make her drowsy and lazy. (AR 274.) Plaintiff lies down on a couch. (AR 275.)

17 For a year, plaintiff has seen a psychiatrist monthly but cannot remember his name. (AR 271-
18 272, 288.) Plaintiff has "always had voices come and go in my mind and sometimes I see figures. . . .
19 Just like shadows." (AR 284-285.) The voices only call plaintiff's name. (AR 285.) Plaintiff has
20 trouble with concentration and memory but has no suicidal thoughts. (AR 286.) Plaintiff has daily
21 crying spells. (AR 286.) Plaintiff no longer takes Paxil. (AR 288.)

22 Plaintiff takes medications for fibromyalgia and rheumatoid arthritis but cannot remember their
23 names. (AR 267.) Plaintiff takes methadone which she receives weekly from a clinic. (AR 267.)
24 Plaintiff drives 38 miles each way between Taft to Bakersfield for the methadone. (AR 281.) About
25 three months prior to the hearing, plaintiff stopped methadone and used heroin "because of the pain and
26 everything." (AR 268.) A friend gave her the heroin. (AR 285.)

27 Plaintiff was last incarcerated nine years ago for 18 months. (AR 268.) In prison, plaintiff ran
28 a big mixer in the main kitchen. (AR 268.) Possession of drugs is the only felony for which plaintiff

1  has been convicted. (AR 268.)

2  Plaintiff cares for her two step-children with whom she lives. (AR 269.) At the time of the
3  hearing, the children were ages nine and ten. (AR 270.) With her step-children, plaintiff reads, sits and
4  talks, watches television and videos, and tries to go for a little walk. (AR 278.) Plaintiff has not seen
5  her step-children's teachers. (AR 279.) At times, plaintiff cooks her step-children "a big three course
6  meal." (AR 282.) On a normal day, plaintiff tries to clean her house and is "just there." (AR 275.)
7  Plaintiff dusts, wipes things down, folds clothes and laundry, and tries to vacuum. (AR 277.) Plaintiff
8  travels from Taft to Bakersfield to shop. (AR 278.) Plaintiff's two-year-old granddaughter spends
9  weekends with plaintiff when plaintiff's daughter works. (AR 280.) Plaintiff cares for her
10 granddaughter over night at times. (AR 281.) Plaintiff visits her mother, brother and sister. (AR 281.)

11 Five pounds is heaviest plaintiff is able to lift/carry without pain. (AR 275.) Pain prevents
12 plaintiff to lift her 20-pound granddaughter. (AR 276.) Plaintiff is able to walk 10-15 steps and to stand
13 a few minutes. (AR 276.) Plaintiff can sit for a few minutes before she needs to stand. (AR 276.)
14 Bending forward from the waist hurts plaintiff's back and legs. (AR 277.) Plaintiff is unable to kneel,
15 stoop, squat and get up. (AR 277.) Plaintiff is unable to sleep through the night. (AR 277.)

16 Plaintiff has difficulty getting in and out of the shower and putting on pants. (AR 284.) At the
17 time of the hearing, plaintiff took Trazedone, Lexapro, Seroquel, Naproxen, Lisinopril, Lavoxyl,
18 Nasacort, and a sleep medication. (AR 289-290.)

### The ALJ's Findings

20 With his September 16, 2004 decision, the ALJ identified the primary issue as "whether the
21 claimant is disabled." (AR 13.) In concluding that plaintiff is not disabled and thus not entitled to SSI,
22 the ALJ found:

23 1. Plaintiff has hepatitis C, chronic back pain, and major depression with psychotic features
24    but lacks an impairment or combination of impairments listed in or medically equal to
25    an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix
26    1.
27 2. Plaintiff's allegations of pain and limitations are not credible.
28 3. Plaintiff has the residual functional capacity to perform exertional and nonexertional

   requirements of medium work (lift/carry 50 pounds occasionally and 25 pounds frequently) with occasional bending, stooping, squatting or climbing and limited to simple repetitive tasks.

4. Plaintiff is unable to perform her past relevant work as detailer, cook, waitress and sales clerk.

5. Plaintiff is not disabled based on an exertional capacity for medium work, plaintiff's age, education, and work experience, 20 C.F.R. § 416.969, and section 203.18 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 ("Medical-Vocational Guidelines"). (AR 18-19.)

## DISCUSSION

### Standard Of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[1] Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will

---

[1] "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988). "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete and detailed objective medical reports of his condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). Plaintiff must furnish medical and other evidence about plaintiff's medical impairments. 20 C.F.R. §§ 404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that shows that you are blind or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical evidence to determine whether you are disabled or blind. You are responsible for providing that evidence.")

Here, plaintiff claims disability since April 6, 2002 due to hepatitis C, thyroid and heart problems, anemia and herniated back. (AR 56a, 59.)

With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's November 30, 2004 decision.

### Dr. Kelly's Opinion

Plaintiff contends that the ALJ failed to properly evaluate Dr. Kelly's assessment that plaintiff is unable to perform simple repetitive tasks and to maintain employment for 12-36 months. Plaintiff argues that the ALJ "failed to provide any reason to reject Dr. Kelly's findings and opinions." Plaintiff claims that the ALJ misconstrued Dr. Goklaney's assessment and improperly relied on such misconstruction.

The Commissioner acknowledges that the ALJ could have provided "a better rationale" to reject Dr. Kelly's opinion but "such omission was immaterial, because substantial evidence supported the

ALJ's determination that Plaintiff could work and could perform simple repetitive tasks."

The Ninth Circuit Court of Appeals distinguishes opinions among physicians who treat claimants (treating physicians), who examine but do not treat claimants (examining physicians), and who neither treat nor examine claimants (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1995). "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. An ALJ may meet his obligation to set forth specific, legitimate reasons based on substantial evidence in the record "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Cotten v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

The ALJ summarized plaintiff's mental health treatment:

> Claimant received psychiatric services and case management services from Kern County Mental Health since January 13, 2003 for the diagnosis of major depressive disorder with psychotic features (Exhibit 12F, p. 1). In February 2004, her symptoms were noted to be fairly stable with the prescribed medication (Exhibit 14F, p. 8). On April 8, 2004, a progress note showed claimant's speech was noted to be normal and her thought process was unremarkable. She claimed to still experience auditory hallucinations, but her insight was noted to be good and her judgment fair. Her attention and concentration were intact. She was noted to be of average intelligence and oriented in at least three spheres (Exhibit 14F, p. 7). The June 204 follow-up was essentially the same (Exhibit 14F, p. 2).
>
> On January 25, 2003, claimant underwent a consultative psychiatric evaluation by Sonya Kelly, Ph.D. Dr. Kelly diagnosed major depressive disorder recurrent, severe with psychotic features; post traumatic stress disorder; and polysubstance dependence in sustained partial remission (Exhibit 7F, p. 5). (AR 14-15.)

Turning to Dr. Goklaney, the ALJ observed:

> From a mental standpoint, Dr. Ravi Goklaney opined claimant could understand, remember, and carry out simple and complex job instructions; able to maintain concentration, attention and persistence; perform activities within a schedule and maintain regular attendance; and respond appropriately to changes in a work setting (Exhibit 10F, pp. 1-5). It is relevant that this opinion was rendered after the doctor's initial interview with claimant and prior to claimant being prescribed medication. The most recent assessments show claimant made good eye contact; she had a normal speech; psychomotor was unremarkable; she was cooperative; and her thought process was unremarkable (Exhibit 14F, pp. 2, 6, 7). (AR 16.)

1       As the Commissioner notes, the ALJ was "remiss" in failing to evaluate Dr. Kelly's assessment in greater detail. Nonetheless, the clear import is that the ALJ rejected her assessment in favor of other evidence. In *Magallanes*, 881 F.2d at 755, the Ninth Circuit Court of Appeals addressed an analogous situation and noted that although an ALJ "did not recite the magic words" to reject a physician's opinion about disability onset, "our cases do not require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." Of key note, plaintiff did not claim mental health problems in her initial SSI application, and the ALJ properly so noted. (AR 17, 55, 59.) Near the time of Dr. Kelly's evaluation, a Kern County Mental Health therapist also assessed plaintiff with major depression disorder with psychotic features but noted no significant cognitive deficits. (AR 138-142.)

      The ALJ properly considered plaintiff's non-compliance with her treatment:

> There are gaps of time noted between office visits and there are indications in the record of claimant not being compliant with treatment. Claimant was first interviewed by Dr. Goklaney at mental health in May 2003 and she was scheduled to return in June 2003, but the evidence fails to show a follow-up visit until February 2004 (Exhibit 14F, p. 1, 8, 11) . . . . Progress notes show that claimant has not gotten her medicine timely (Exhibit 11F, p. 11) and that she has failed to make follow-up appointments (Exhibit 11F, p. 1). (AR 17.)

Plaintiff had been further non-compliant with her back treatment. (AR 89, 91.)

      As of April and June 2004, plaintiff was assessed with good insight, fair judgment, average intelligence, intact attention/concentration and orientation. (AR 237, 238, 242.) Plaintiff noted that medication helped. (AR 240.) Plaintiff's consistent medication regimen substantiated control or stabilization of symptoms. Since "existence of emotional disorder . . . is not *per se* disabling," proper inquiry includes whether an impairment is "amenable to control." *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982). As of May 2003 (five months after Dr. Kelly's evaluation), Dr. Goklaney prescribed plaintiff Paxil 20 mg, a moderate level. (AR 178.) There is no record of counseling services. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("conservative treatment" suggests "a lower level of both pain and functional limitation."); *Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ entitled to draw inference from general lack of care).

      Moreover, as of June 5, 2003, Dr. Goklaney found plaintiff's orientation to all spheres, intact concentration and judgment, normal memory, average intelligence, anxious, depressed, blunted and

1  constricted mood, and goal-directed thought process. (AR 172, 173.) Dr. Goklaney assessed plaintiff
2  with: (1) unlimited ability to understand, remember and carry out simple instructions, to perform
3  activities within a schedule, and to maintain regular attendance; (2) good ability to understand, remember
4  and carry out complex instructions, to maintain concentration, attention and persistence, and to respond
5  appropriately to changes in a work setting; and (3) fair ability to complete a normal workday and
6  workweek without interruptions from psychologically based symptoms. (AR 174.) Dr. Vea found no
7  severe impairments expected to last 12 months. (AR 156, 159, 164, 169.)   *See Morgan v.*
8  *Commissioner of Social Security Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (opinion of nonexaming
9  medical advisor may serve as substantial evidence when supported by other evidence in the record and
10 consistent with it).

11       Plaintiff attempts to discount Dr. Goklaney's opinion based on his limited treatment of plaintiff.
12 Such argument runs both ways as to Dr. Kelly, who saw plaintiff once. "[T]he ALJ is responsible for
13 determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities."
14 *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th
15 Cir. 1995) ("solely the province of the ALJ to resolve conflict" between treating and nontreating
16 sources.) The ALJ accorded the weight he deemed appropriate to the respective assessments.

17       As noted by the Commissioner, Dr. Kelly presumed that plaintiff was randomly drug tested to
18 condition her assessment that plaintiff's symptoms did not arise from drug use. (AR 148.) Such
19 presumption is precarious in that plaintiff testified that she started a methadone take-out program a day
20 before the August 18, 2004 ALJ hearing and that she had used heroin three months prior to the hearing.
21 (AR 267-268.) "[T]he ALJ is entitled to draw inferences 'logically flowing from the evidence.'" *Marci*
22 *v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.
23 1982)). A logical inference is that plaintiff was not randomly drug tested to undermine Dr. Kelly's
24 presumption and in turn her assessment. In addition, plaintiff's acknowledged activities vitiates Dr.
25 Kelly's assessment that plaintiff is unable to perform consistently simple repetitive tasks. Plaintiff
26 testified that she drives 38 miles each way between Taft to Bakersfield for methadone, cares for her live-
27 in step-children who are preteens, reads and enjoys entertainment with them, performs household chores
28 and cooks her step-children "a big three course meal." (AR 269, 275, 278, 281, 282.) Plaintiff also

1  cares for her infant granddaughter. (AR 280.) Although plaintiff informed Dr. Kelly that plaintiff
2  "spends her time doing chores, watching television, and reading," Dr. Kelly apparently did not factor
3  in such activities. (AR 146.) *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1991) (proper
4  consideration given to claimant's ability "to take care of her personal needs, prepare easy meals, do light
5  housework, and shop for some groceries.")

6  Of further note, the ALJ discounted plaintiff's "credibility and the severity of her impairments,"
7  a finding which plaintiff does not challenge. (AR 15, 18.) An ALJ may reject a physician's report based
8  on a claimant's exaggerated claims. *See, Sandgathe*, 108 F.3d at 980. A physician's opinion of
9  disability "premised to a large extent upon claimant's own accounts of his symptoms and limitations"
10 may be disregarded where those complaints have been "properly discounted." *Fair v. Bowen*, 885 F.2d
11 597, 605 (9th Cir. 1989) (citing *Brawner v. Sec. of Health & Human Servs.*, 839 F.2d 432, 433-434 (9th
12 Cir. 1988)); *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113, 117 S.Ct.
13 953 (1997) ("no physician has been able to find a link between [claimant's] complaints and known
14 medical pathologies"). Although the ALJ's evaluation of Dr. Kelly's assessment is less than stellar, the
15 ALJ's decision and finding that plaintiff is limited to simple repetitive tasks are supported by substantial
16 evidence. This Court is not in a position to disrupt the ALJ's decision based on its evaluation of Dr.
17 Kelly's assessment.

**Medical-Vocational Guidelines**

19 Plaintiff argues that the ALJ erred to apply the Medical-Vocational Guidelines because plaintiff
20 "suffers from significant non-exertional limitations that preclude the[ir] application." Plaintiff argues
21 that the ALJ's limitation of plaintiff to medium work and occasional bending and stooping "required the
22 ALJ to query a vocational expert as to whether jobs existed in significant numbers in either the local or
23 national economy that Ms. Quiroga could perform." The Commissioner responds the ALJ properly
24 applied the Medical-Vocational Guidelines in that plaintiff's ability to perform medium work enables
25 her to perform light work with the postural limitations. The Commissioner argues that the ALJ's finding
26 that plaintiff is able to perform work based on the Medical-Vocational Guidelines is supported by
27 substantial evidence.

28 As a reminder, the ALJ found that plaintiff has the residual functional capacity to perform

16

exertional and nonexertional requirements of medium work (lift/carry 50 pounds occasionally and 25 pounds frequently) with occasional bending, stooping, squatting or climbing and limited to simple repetitive tasks. (AR 18.)

In the final step of the five-step disability evaluation, the Commissioner has the burden to show, in light of a claimant's residual functional capacity, he/she can engage in other substantial gainful work that exists in the national economy. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The Commissioner may meet this burden by testimony of a vocational expert or reference to the Medical-Vocational Guidelines. *Osenbrock*, 240 F.3d at 1162.

If a claimant has significant non-exertional impairments, an ALJ cannot rely on the Medical-Vocational Guidelines (also known as "grids"). *Osenbrock*, 240 F.3d at 1162. "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Buckart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). An ALJ correctly applies the Medical-Vocational Guidelines when a claimant fails to establish a significant non-exertional impairment. *Marci*, 93 F.3d at 545. If the Medical-Vocational Guidelines fail to accurately describe a claimant's limitations, an ALJ may not rely on the Medical-Vocational Guidelines alone to show the availability of jobs for the claimant and must hear testimony of a vocational expert. *Reddick v. Charter*, 157 F.3d 715, 729 (9th Cir. 1998); *Jones*, 760 F.2d at 998. When vocational expert testimony is used, the vocational expert must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy. *Osenbrock*, 240 F.3d at 1162-1163.[2]

In *Desrosiers v. Secretary of Health and Human Servs.,* 846 F.2d 573, 576 (9th Cir. 1988), the Ninth Circuit Court of Appeals provided ALJs guidance to address claims of non-exertional limitations:

---

[2] The Ninth Circuit Court of Appeals has further noted:

> When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. *Desrosiers*, 846 F.2d at 577. In such instances, the Secretary must take testimony of a vocational expert, *Jones*, 760 F.2d at 998, and identify specific jobs within the claimant's capabilities. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). Thus, the grids will be inappropriate where the predicate for using the grids – the ability to perform a full range of either medium, light or sedentary activities – is not present.

*Burkhart*, 856 F.2d at 1340.

> [T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986); *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983); *Olde v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983).
>
> The ALJ must weigh conflicting evidence concerning the claimant's past work experience, education, and present psychological and physical impairments. The ALJ then applies the grids to these factors, ensuring that the final determination will be both consistent with other similar cases and expeditious. The claimant may challenge the sufficiency of the evidence supporting the ALJ's assessment. A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable.
>
> All this can be accommodated to a system of fair and expeditious disposition of claims by those asserting pain or other non-exertional limitations. It is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines.

*Desrosiers,* 846 F.2d at 577 (citing decisions from the Second, Fourth, Fifth, Sixth and Eighth Circuit Courts of Appeals).

Plaintiff points to no concrete error with the ALJ's application of the Medical-Vocational Guidelines and may not avoid their application by allegation of non-exertional impairment. After reviewing the medical evidence and plaintiff's testimony (AR 14-17), the ALJ properly limited plaintiff to medium work with occasional bending, stooping, squatting or climbing. (AR 17.) The assessments of Dr. Rios and the DDS physician substantiate such limitation. (AR 123, 127-128.) Plaintiff's ability to perform medium work with postural limitations permitted her to perform related light and sedentary work. 20 C.F.R. 416.967(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work.") "Because a reasonable mind could conclude on the basis of the evidence of record that [claimant] was not disabled, we find that substantial evidence supports the ALJ's findings." *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). The evidence reasonably supports that plaintiff is not disabled.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded plaintiff is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to

1  remand for further proceedings. This Court DIRECTS the Court's clerk to enter judgment in favor of
2  defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Vicki M. Quiroga
3  and to close this action.
4       IT IS SO ORDERED.
5  **Dated:   July 6, 2006**       **/s/ Lawrence J. O'Neill**
   66h44d      UNITED STATES MAGISTRATE JUDGE